# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ISAAC J. MORRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-0362 (ESH) |
| | ) | |
| SECRETARY OF DEFENSE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Isaac Morrison has sued the Secretaries of Defense, Veterans Affairs and the Navy, the Executive Director of the Board for Correction of Naval Records ("Board") and the Commandant of the Marine Corps (collectively, "government"), seeking review under the Administrative Procedure Act ("APA") of the Board's decision not to vacate five entries in his record relating to non-judicial punishment ("NJP") that Morrison received in 1986. (*See* Compl. at 1, 4.) The government has moved for summary judgment. (Def.'s Mot. for S.J. ("Def.'s Mot.").) For the reasons stated herein, the government's motion will be granted.

## BACKGROUND

Isaac Morrison enlisted in the United States Marine Corps ("Marines") in 1978 for a period of four years. (Compl. at 2; Def.'s Mot. at 1.) In 1982 he reenlisted for an additional six years and was promoted to the rank of Sergeant. (Compl. at 1-2; Def.'s Mot. at 1-2.) In July 1986, Morrison was advised that his Commanding Officer intended to impose NJP because he had been absent without leave. (Administrative Record ("AR") at 27.) Morrison was found guilty of an "unauthorized absence" and was punished with a reduction in rank and a fine of

nearly $1,000, deducted from two months' paychecks, on July 10, 1986. (*Id.*) This punishment was immediately suspended, with orders that the punishment be remitted after ninety days. (*Id.*) Morrison did not appeal the finding or the punishment. (*Id.*)

On September 10, 1986, Morrison failed to return to his ship by his 2:00 a.m. curfew. (AR at 34.) The next day, the order suspending Morrison's punishment was vacated and Morrison was demoted to Corporal. (*Id.* at 27.) On July 4, 1987, Morrison disobeyed a direct order from a Lance Corporal. (*Id.*) On September 23, 1987, Morrison was again told that his Commanding Officer intended to impose NJP. (*Id.*) Again, Morrison accepted NJP, was found guilty, and had a month's pay reduced by $100, although the punishment was suspended for ninety days. (*Id.*)

On June 25, 1987, Morrison submitted a response to an evaluation that described his fitness from June 1, 1986 through August 15, 1986. (*Id.* at 32-34.) Morrison's response alleged "prejudiced vindictiveness" and suggested that "several new officers" in his unit "did not savor" his "outspokenness, frankness, or personality." (*Id.* at 32.) He expressed an "intention to continue to serve honorably . . . despite this conspicuous adulteration of Military hierarchy, integration, and judiciary," which "reinforce[d] the concepts of prejudiced, bias[ed], racist, opinionated individuals." (*Id.*) The Executive Officer for Morrison's squadron submitted a response on July 15, 1987, which stated that Morrison did "adequate work" but was "continually identified for minor disciplinary infractions during his off duty hours," and that Morrison's "leadership qualities . . . [were] sincerely in question." (*Id.* at 35.) Morrison received an honorable discharge from the Marines when his enlistment expired on January 13, 1988. (*Id.* at 1.) However, because of his disciplinary record, he was assigned an "RE-4 reenlistment code," which barred him from reenlisting in any branch of the service. (*Id.*; Def. Mot. at 7.)

In February 2008, Morrison filed an application with the Board, requesting that the five entries relating to the July 10, 1986 NJP be removed from his record. (AR at 16.) In support of his claim, he submitted fitness reports "that substantiate the fact that [he] was and still is an outstanding marine." (*Id.* at 16, 62.) He asked the Board to consider his application, despite the considerable delay, "because of the gravity of the injustice and its racial overtones." (*Id.* at 37.) The Board sought the "comments and recommendation" of the Commandant for the Marine Corps to help in "arriving at a fair and equitable decision." (*Id.* at 3.) In response, the Judge Advocate Division submitted a three-page opinion recommending that the Board reject Morrison's request. (*Id.* at 17-19.) The opinion noted that Morrison argued that his NJP was unjust because the "overall character of his performance and service indicate that he was unjustly punished." (*Id.* at 18.) It stated that Morrison's procedural claims were "without merit" because he was "afforded his full procedural rights," including his right to an attorney, to refuse NJP, and to appeal. (*Id.*) The opinion also rejected Morrison's suggestion that his constitutional right to a speedy trial had been violated, because this right does not apply to the NJP process. (*Id.*) Finally, the opinion concluded that Morrison's assertions of racial bias and injustice "have no merit based on the record," because the suspension of Morrison's punishment in 1986 illustrated a "tempered approach" taken toward Morrison's misconduct that "would have allowed him to continue on active duty." (*Id.* at 19.) The opinion noted that Morrison bore the burden of showing that the record entries were "in error or unjust," and that there was no evidence in the record to support his claims. (*Id.*)

Morrison's response to the advisory opinion, which was submitted on August 6, 2008, summarizes his overall theory of the case: "[The opinion] never explains how a marine whose fitness reports alway[s] had the highest markings 'particularly desired' even after his reduction!

How was the marine the only one in his field selected for promotion for 1986? If his NJP was not motivated by racism, maybe the respondent can elucidate." (*Id.* at 21.) Morrison also argued that "the whole procedure was flawed from the very onset" because the "initiator of the charge was not in my command chain." (*Id.*) Finally, Morrison suggested that "based on the record before the board that there must have been some ulterior motive" because his "fitness reports verify [his] exemplary performance." (*Id.* at 22.)

The Board issued its decision on October 2, 2008, which stated that it had "carefully weighed all potentially mitigating factors" and that Morrison's discharge was "based on the type warranted by [his] service record, which reflected [his] work performance while in the Navy." (*Id.* at 11.) The Board noted that Morrison received three NJPs while enlisted as a Marine, and that the "seriousness of [his] misconduct" outweighed the mitigating factors he had identified, making any changes to his record unwarranted. (*Id.* at 10-11.)

Morrison's *pro se* complaint, filed on March 5, 2010, challenged the "arbitrary and capricious ruling" of the Board and sought *de novo* review of the Board's decision, as well as an order requiring "reinstate[ment]" of back pay for the period 1986 through 1998 and reinstatement to active duty. (Compl. at 1, 4.) On August 30, 2010, the government moved to dismiss for lack of jurisdiction and for failure to state a claim on which relief could be granted. (Mot. to Dismiss [Dkt. No. 14].) The Court denied the government's motion in a Memorandum Opinion and an Order issued on January 12, 2011. (Memorandum Opinion [Dkt. No. 24]; Order [Dkt. No. 25].)

In its Opinion, the Court held that Morrison had stated a claim for relief under the APA because he alleged that the Board failed to consider evidence that he was "an excellent marine" when deciding whether to change his records. (Mem. Op. at 7-8.) More specifically, Morrison

4

alleged that the Board overlooked "specific facts," such as his promotions and his receipt of "nothing but outstanding proficiency marks and exemplary fitness reports." (*Id.* (quoting Compl. at 2).) The Court held that if the Board "failed to consider this mitigating evidence, [it] may have acted arbitrarily and capriciously."[1] (*Id.*) The Court did not reach the Secretary's other arguments for dismissing Morrison's complaint. (*Id.* at 8 n.2.)

## STANDARD OF REVIEW

Under the APA, a reviewing court must defer to an agency's decision unless it "is arbitrary and capricious, contrary to law, or unsupported by substantial evidence." *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997). Generally, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Thus, a court "will not disturb the decision of an agency that has 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *MD Pharm. v. Drug Enforcement Admin.*, 133 F.3d 8, 16 (D.C. Cir. 1998) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43). An agency's decision need not "be a model of analytic precision to survive a challenge." *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404 (D.C. Cir. 1995). Rather, "[a] reviewing court will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.*

A final decision of the Board is subject to judicial review under § 706 of the APA, 5 U.S.C. § 706. *See Frizelle*, 111 F.3d at 176. Reviewing the decision of a military correction

---

[1] Contrary to Morrison's understanding, the Court did not hold that "mitigating evidence was never taken into account." (Pl.'s Opp'n at 2.)

board requires an "unusually deferential application" of the arbitrary or capricious standard. *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989); *see also Musengo v. White*, 286 F.3d 535, 538 (D.C. Cir. 2002); *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000). As the Court of Appeals explained in *Kreis*:

> the question whether a particular action is arbitrary or capricious must turn on the extent to which the relevant statute, or other source of law, constrains agency action. While the broad grant of discretion implicated here does not entirely foreclose review of the Secretary's action, the way in which the statute frames the issue for review does substantially restrict the authority of the reviewing court to upset the Secretary's determination. It is simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act "*when he considers it necessary* to correct an error or remove an injustice," 10 U.S.C. § 1552(a) (emphasis added), than it is if he is required to act whenever a court determines that certain objective conditions are met, *i.e.*, that there has been an error or injustice.

*Kreis*, 866 F.2d at 1514. Thus, a court's role in reviewing the decision of a military corrections board is to determine whether "the decision making process was deficient, not whether [the] decision was correct."[2] *Dickson*, 68 F.3d at 1405-06 (quoting *Kreis*, 866 F.2d at 1511). To enable a court to perform that review and ensure that the decision is not "utterly unreviewable," a military corrections board "must give a reason that a court can measure, albeit with all due deference, against the 'arbitrary or capricious' standard of the APA." *Kreis*, 866 F.2d at 1514-15. Moreover, if the Board "fail[s] to address . . . arguments that are not facially frivolous," its decision must be reversed and the matter remanded. *Frizelle*, 111 F.3d at 174, 177; *Dickson*, 68 F.3d at 1404 ("fail[ure] to provide anything approaching a reasoned explanation" rendered military correction board's decision "arbitrary and capricious"); *see also Poole v. Harvey*, 571 F. Supp. 2d 120, 125 (D.D.C. 2008) (the Board "must respond to all non-frivolous and potentially meritorious arguments an applicant raises").

---

[2] For this reason, the government's failure to provide "one shred of evidence to fortify and or support the decision made" by the Board is irrelevant. (Pl.'s Opp'n at 3.)

## ANALYSIS

The Secretary, acting through the Board, "may correct any military record" when "the Secretary considers it necessary to correct an error or remove an injustice." *See* 10 U.S.C. § 1552(a)(1). In presenting his case to the Board, Morrison bore the burden of establishing by "cogent and clearly convincing evidence" that the record to be corrected was the result of a material error or injustice. *Calloway v. Brownlee*, 366 F. Supp. 2d 43, 54 (D.D.C. 2005). In doing so, he was required to "overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Frizelle*, 111 F.3d at 177 (internal quotation marks omitted). Morrison's complaint alleges that the Board's decision not to correct his records was arbitrary and capricious because the Board "overlooked the facts" that: A) his "charge/suspension/vacation was clearly vindictive and racist"; B) he was an "outstanding marine" with an "exemplary" career; and C) his constitutional rights were violated.[3] (Compl. at 3.) Because the Board considered and responded to the first two claims, and because the third claim was frivolous, the Court will grant the government's motion for summary judgment.

---

[3] The government also argues that it was not a "procedural error" for someone outside Morrison's chain of command to initiate charges against him. (Def.'s Mot. at 19-20 (quoting AR at 21).) Morrison does not contest this point and argues only that the Commanding Officer was "without jurisdiction to offer NJP as the plaintiff[] was assigned to a ship." (Pl.'s Opp'n at 2.) However, Morrison's complaint does not allege that the Board failed to address either procedural issue. (*See* Compl. at 3-4.) Therefore, the Court need not determine whether the Board adequately considered them. *See Quinn v. District of Columbia*, 740 F. Supp. 2d 112, 130 (D.D.C. 2010) ("It is well established that plaintiffs may not, through summary judgment briefs, raise new claims where such claims were not raised in the complaint") (internal quotation marks and alterations omitted). Even if Morrison's complaint *had* argued that his Commanding Officer lacked jurisdiction over him, Morrison did not raise this issue with the Board (*see* AR 16, 20-22, 57), so it cannot be raised now. *Buckingham v. Mabus*, 772 F. Supp. 2d 295, 300 (D.D.C. 2011) ("'hard and fast rule of administrative law' that 'issues not raised before an agency are waived and will not be considered by a court on review'") (quoting *Nuclear Energy Inst. v. EPA*, 373 F.3d 1251, 1297 (D.C. Cir. 2004)).

## A. Racial Bias

Morrison argues that the Board erred in overlooking the clearly "vindictive and racist" nature of the charges against him (Compl. at 3) and that the government has failed to produce "one shred of evidence to fortify and or support the decision made by the Commanding Officer and the [Board]." (Pl.'s Opp'n at 3.) So long as the Board "examine[s] the relevant data and articulate[s] a satisfactory explanation for its action," it does not act arbitrarily or capriciously. *See Puerto Rico Higher Educ. Assistance Corp. v. Riley*, 10 F.3d 847, 850 (D.C. Cir. 1993) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43). Here, Morrison's claim is directly contradicted by the Board's statement that it "carefully weighed" his allegations of "racism and prejudice" and determined that the decision to allow Morrison to "stay in the Navy until the end of [his] enlistment instead of being separated for a pattern of misconduct or for commission of a serious offense, due to [his] numerous NJP's, shows no indication of prejudice or vindictiveness." (AR at 11) Morrison introduced no evidence of racism and relied solely on his own opinion that he was treated harshly.[4] (Pl.'s Opp'n at 4.) The Board specifically dealt with this argument by pointing out that he was allowed to serve as a Marine until the end of his enlistment, despite the numerous disciplinary violations in his record. (AR at 11.) Thus, there was nothing unreasonable about the Board's determination that Morrison's assertions of racial bias were meritless. *See Mueller v. Winter*, 485 F.3d 1191, 1198 (D.C. Cir. 2007) ("nothing unreasonable" about Board's finding that there was insufficient evidence of injustice where neither plaintiff nor affiant had identified a "single factual inaccuracy" in contested report).

---

[4] As the advisory opinion points out, "[t]here is no evidence of any racial bias in the case other than [Morrison's] assertions," which were "directly contradicted by his command." (AR at 18.)

### B. Morrison's Record as a Marine

The Court identified Morrison's allegation that the Board "failed to consider" evidence that he was an "excellent marine" as a potential basis for Morrison's claim for relief under the APA. (Mem. Op. at 8.) A military review board acts arbitrarily and capriciously when it "fail[s] to address" arguments that are not "facially frivolous." *Frizelle*, 111 F.3d at 175, 177. However, the record shows that the Board *did* address this argument in its opinion, which noted that it reviewed Morrison's "entire record and application" and found that Morrison's discharge was "based on the type warranted by [his] service record, which reflected [his] work performance." (AR at 11.) Moreover, the Board "concluded" that the "seriousness of [Morrison's] misconduct" outweighed the mitigating factors he identified. (*Id.*) Thus, because the Board addressed Morrison's argument that he was an exemplary marine by finding that the seriousness of the offenses with which he was charged outweighed his previous record of service, and because there is, at the very least, a "rational connection between" the facts and the choice made by the Board, it did not act arbitrarily and capriciously. *See Frizelle*, 111 F.3d at 176 (quoting *Dickson*, 68 F.3d at 1404).

### C. Violation of Constitutional Rights

Morrison's complaint alleges that his constitutional rights were violated. He has, however, not produced any evidence to support this claim, and his brief opposing summary judgment offers no further explanation as to what argument, if any, the Board failed to consider. Moreover, Morrison's response to the advisory opinion submitted to the Board makes no mention of constitutional violations. (AR at 20-22.) To the extent the constitutional right Morrison refers to is his right to a speedy trial (AR at 23), the Board was not obligated to respond because his claim was frivolous. The protections of the Sixth Amendment right to a

speedy trial are "triggered only by a federal arrest or indictment." *United States v. Chapman*, 954 F.2d 1352, 1358 n.8 (7th Cir. 1992). They do not apply to non-judicial punishment, in which an armed services member essentially waives his right to trial by court-martial.[5] *Cf. Middendorf v. Henry*, 425 U.S. 25, 34 & n.13 (1976) (Sixth Amendment does not apply to summary court-martial proceedings because they are not criminal proceedings). Thus, because the issue was frivolous, the Board was not arbitrary or capricious in failing to address it.

## CONCLUSION

For the reasons stated above, the Court will grant the government's motion for summary judgment. A separate Order accompanies this Memorandum Opinion.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

DATE: August 5, 2011

---

[5] Even if Morrison had been court-martialed, the government would only have been required to bring charges within 120 days. *See United States v. Anderson*, 50 M.J. 447, 448 (C.A.A.F. 1999). Morrison's letter to the Board argued that the offense took place on May 26, 1986, and that the non-judicial punishment did not take place until July 10, 1986, a difference of 45 days. (AR at 23.)